Gary GREUBEL and Cathy Greubel, Plaintiffs–Appellants,

v.

KNAPPCO CORPORATION, Defendant–Appellee.

No. 98–1132.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1998.

Decided Nov. 13, 1998.

Theodore Lockyear, Lockyear & Kornblum, Mark E. Miller (argued), Keck, Folz & Miller, Evansville, IN, for Plaintiffs–Appellants.

David L. Jones, Keith M. Wallace (argued), Jones & Wallace, Evansville, IN, for Defendant–Appellee.

Before CUDAHY, MANION and EVANS, Circuit Judges.

CUDAHY, Circuit Judge.

In this diversity action applying Indiana law, the plaintiff, a coal handler, brought a products liability suit against Knappco, the manufacturer of an access door which was installed in a coal dust collector by MAC Equipment for use by an electric utility and its employees. The district court granted Knappco's motion for summary judgment and the plaintiff, Gary Greubel, appeals. The issue is whether the door manufacturer had a duty to warn a user of the dust collector of dangers associated with the door. Indiana law imposes no such duty and we affirm.

## Background

Coal conveyors transport coal from barges on the Ohio River to the Indiana–Michigan Power Plant in Rockport, Indiana. Numerous stations between the river and the plant divert some of the coal to different conveyors. These stations include coal dust collector systems, which draw dust by vacuum into a baghouse where the dust collects in fabric bags. The fabric bags in the collectors are periodically cleaned, sending the dust to the bottom of the collector and into a hopper. A valve attached to the hopper then discharges the dust onto another set of plant-bound conveyors. Each of the collectors has an access door in the hopper just above the valve to allow for inspection of the interior.

MAC Equipment manufactured five of the collectors at the plant. In April 1993, the hoppers on four of these collectors were equipped with eight-inch bolted inspection doors. Station 6 was different; it was outfitted with a twenty-inch, easily-opened access door mounted at an angle so that when unlatched the door opened fully. MAC purchased Station 6's door from Knappco and installed it in the collector to comply with the plant's specifications. According to the Knappco catalog description, the access door "is a re-designed, full opening, non-pressure rated manhole" which is "suited for filling, inspection and access to interiors of stationary storage tanks." Knappco also makes, and the catalog lists, pressure-rated doors with safety latches and warnings stamped into the metal covers. The catalog description was the only representation Knappco made to MAC about the door in question. Knappco was never consulted or informed about MAC's planned use of the door in the collector.

On April 12, 1993, Gary Greubel, a plant employee, while inspecting the collector at Station 6, opened the Knappco-made access door in the MAC-assembled collector. He was immediately covered by coal dust. An

unknown source ignited the coal and Greubel sustained severe burns over 25% of his body.

Greubel sued Knappco, among others, based on two theories of liability. Count VIII sounded in strict liability and alleged that the access door manufactured by Knappco was defective because it was improperly hinged, lacked a safety latch and came without sufficient warning labels and operating instructions disclosing the dangers relating to the presence of coal, smoke or fire inside the dust collector. Count IX stated a claim for negligent design and negligent failure to warn.

Greubel hired several experts to determine the causes of the accident. One of these experts, George Schultz, concluded in a written report that the access door was not suitable for use in collectors and that Knappco had failed to warn door-users. In a subsequent deposition, however, Schultz admitted that Knappco's catalog description of the door provided adequate instruction in its use. Schultz further acknowledged that collectors were non-stationary, pressurized environments that required bolted, partially-opening access doors.

Knappco's president, John Anderson, also in a deposition, was asked numerous technical questions with reference to Knappco's catalog. Anderson demurred to most of these questions but gave qualified or equivocal answers to some. For example, when asked whether a hopper was a storage tank, he first demanded clarification and then said that it "could be." Anderson did state unequivocally, however, that Knappco's access doors—and specifically the one before us—were not suited for use with combustible materials like coal dust.

On Knappco's motion for summary judgment, the district judge ruled that Greubel would have to show either that the door was defectively designed or that accompanying warnings were inadequate. To prevail either in negligence or in strict liability, Greubel would have to demonstrate that Knappco knew that the door was intended for use in a dust collector. For lack of such a showing, summary judgment was appropriate.

### Discussion

■ We review the district court's decision to grant summary judgment de novo, *see Salve Regina College v. Russell*, 499 U.S. 225, 235, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Target Market Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1141 (7th Cir.1998), applying the same criteria as the district court here. *See* Fed. R. Civ. P. 56(c); *ADVO*, 136 F.3d at 1141. To defeat summary judgment, Greubel must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c).

■ The only issue on appeal is whether Knappco had a duty to warn MAC and Greubel that the access door was unsuitable for use in a collector.[1] Under Indiana law, the scope of the duty to warn is cabined by the foreseeable uses of the product. *See, e.g., Hinkle v. Niehaus Lumber Co.*, 525 N.E.2d 1243, 1245 (Ind.1988); *American Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 188 (Ind. 1983); *Shanks v. A.F.E. Indus., Inc.*, 275 Ind. 241, 416 N.E.2d 833, 837–38 (Ind.1981). A manufacturer cannot be liable for unforeseeable uses of its products nor can it be liable if a product fails to do what it was not intended to do.[2] *See Anderson v. P.A. Rado-*

---

1. In his brief Greubel challenges the district court's statement of the relevant law, its statement of undisputed facts and its application of the law to the facts but fails to distinguish between counts or theories of liability. At oral argument Greubel's attorney asserted that only the duty to warn was at issue. We agree. *See Taylor v. Monsanto Co.*, 150 F.3d 806, 808 (7th Cir.1998) ("Under Indiana law, there is no doctrinal distinction between the negligent and strict liability failure-to-warn actions.") (*citing Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 163 n. 11 (Ind.App.1997)).

2. Greubel also attacks the district court opinion for failing to apply the Indiana Products Liability Act, *see* Ind. Code § 33–1–1.5–1 *et seq.*, and ignoring the lessons of two recent cases. Neither the Act nor the two cases, however, alter the controlling legal principles. The Act imposes liability only for foreseeable uses of a product, *see* Ind. Code § 33–1–1.5–2.5(c) ("If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this chapter."); *Hinkle*, 525 N.E.2d at 1245; *Peters v. Judd Drugs, Inc.*, 602 N.E.2d 162, 164–65 (Ind.App.1992), and the cases similarly add nothing relevant here. *See Natural Gas Odorizing*, 685 N.E.2d at

cy & Sons, Inc., 865 F.Supp. 522, 531 (N.D.Ind.1994), aff'd on other grounds, 67 F.3d 619 (7th Cir.1995); Lantis v. Astec Indus., Inc., 648 F.2d 1118, 1121 (7th Cir.1981).

The district court found nothing in the record to suggest that Knappco was consulted about MAC's planned use for the door or otherwise knew about this use. Greubel does not contest this conclusion. Instead, he argues that there are disputed facts about whether Knappco *should have known* that MAC would install the access door in a collector. Specifically, he attacks the factual basis for the district court's conclusion that the collector was necessarily a pressurized, non-stationary storage tank and was therefore not suited to the Knappco door. Greubel appears to be arguing that because the coal dust collection system might be a non-pressurized environment and might be a stationary storage tank, Knappco could have foreseen that MAC might use the door in a collector.[3] This possibility, he suggests, raises genuine issues of material fact.

■ This argument is a non-starter. Again, Indiana law imposes a duty to warn only of dangers associated with foreseeable uses. See Ind. Code § 33–1–1.5–2.5(b) & (c); Natural Gas Odorizing, 685 N.E.2d at 162. The question therefore is whether the catalog description of the access door is probative of the foreseeable uses of the door.[4] We think that it is. The Knappco catalog specifically designates which doors are pressure-rated and which are not. The catalog discloses that the access door involved here is a "non-pressure rated manhole . . . suited for . . . stationary storage tanks." On the other hand, the catalog shows that many of the

pressure-rated doors include safety catches and imprinted warnings. Beyond the catalog, Knappco made no representations with respect to door uses. Greubel's own expert, Schultz, concluded that the catalog description of the door involved here provided adequate instruction on its proper uses. Knappco could reasonably expect, then, that its doors would be used in accordance with their catalog descriptions. Cf. Peters, 602 N.E.2d at 164–65 (manufacturer not liable when product used without regard for the label); Anderson, 865 F.Supp. at 530–31 (manufacturer not liable when purchaser knowingly rejects optional device that may have prevented injury).

Moreover, the record does not support Greubel's contention that discovery, particularly the depositions of Schultz and Anderson, introduced disputes about material facts. His own expert, Schultz, concluded that the Indiana–Michigan collectors are pressurized, non-stationary environments. Anderson's deposition does not call that conclusion into doubt. In any event, these qualities of the collectors are not determinative. The evidence was undisputed that doors that open fully are not suitable for collectors. Even if a collector was not pressurized or stationary, Knappco could not reasonably have foreseen that its fully-opening door would be used on an apparatus for which only bolted, partially-opening doors are suited. See Phelps v. Sherwood Med. Indus., 836 F.2d 296, 304 (7th Cir.1987) ("An unforeseeable misuse of a product also bars an action under Indiana law.").

In short, Greubel can point us to no facts which suggest that Knappco should have

161–62 (holding that the manufacturer of an odorant additive had a duty to warn natural gas users because they were the foreseeable consumers of the product); McGlothlin v. M & U Trucking, Inc., 688 N.E.2d 1243, 1244–45 (Ind.1997) (addressing "the continued viability of the latent/patent distinction" in determining the existence of a legal duty).

**3.** On this point, Greubel's position is anything but clear. Despite raising and arguing the pressurized/non-pressurized issue, he simultaneously asserts that the resolution of this question is "irrelevant." We think it is material and agree with the district court that there is no question that the collector was pressurized. Also, in a

desperate effort to show that incorporation in the coal dust collection system was a foreseeable use, Greubel claims that Knappco could foresee any use of the access door—labeled in the catalog a "manhole"—for which a "man" needs a "hole" to gain access. This argument is unpersuasive.

**4.** Greubel argues that the catalog description constitutes a warning and that the sufficiency of the warning was a matter for the jury to decide. This puts the cart before the horse. We must first answer the threshold question whether a duty to warn exists at all—a question of law—before reaching the sufficiency issue. See, e.g., American Optical, 457 N.E.2d at 187.

foreseen that its door would be installed in a collector. Knappco therefore cannot be liable for this unintended and unforeseeable use of its product.

AFFIRMED.